# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| **Keith Eugene Washington,** | Civil No. 06-546 (MJD-JJG) |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| **Jessica Symmes,** **Kathryn Reid,** **Barb Nelson,** **Keri Anderson,** **Aillijo Allidis,** | |
| Defendants. | |

JEANNE J. GRAHAM, United States Magistrate Judge

The above matter is before the undersigned on the parties' motions for summary judgment (Doc. Nos. 36, 47). Plaintiff Keith Washington is proceeding on his own behalf. Defendants Jessica Symmes, Kathryn Reid, Barb Nelson, and Keri Anderson are represented by Mark B. Levinger, Assistant Minnesota Attorney General. These motions are referred to this Court for a report and recommendation in accordance with 28 U.S.C. § 636(b) and Local Rule 72.1(b).

Mr. Washington brings action under 42 U.S.C. § 1983, in connection with his incarceration at the Minnesota state prison in Oak Park Heights. He alleges, in material part, that the defendants violated the Eighth Amendment by deliberately disregarding his medical needs. The parties now bring motions for summary judgment.[1]

---

[1] One of the defendants, Aillijo Allidis, has not appeared in this action, either personally or through counsel. To the extent this report refers to "the parties" or "the defendants," these terms are limited to the

**A.    Standard of Review**

A party is entitled to summary judgment where the record shows that there are no issues of material fact and the moving party is entitled to judgment as a matter of law. *Cordry v. Vanderbilt Mortgage & Finance, Inc.*, 445 F.3d 1106, 1109-10 (8th Cir. 2006). An issue of material fact exists, and summary judgment is inappropriate, where the evidence would give a reasonable jury cause to return a verdict for the nonmoving party. *Bass v. SBC Communications, Inc.*, 418 F.3d 870, 873 (8th Cir. 2005).

In this context, all reasonable inferences are taken in favor of the nonmoving party. *Johnson v. Metropolitan Life Ins. Co.*, 437 F.3d 809, 812-13 (8th Cir. 2006). If the nonmoving party fails to present evidence supporting a necessary element of a claim, then that claim cannot survive summary judgment. *Beyer v. Firstar Bank, N.A.*, 447 F.3d 1106, 1108 (8th Cir. 2006).

**B.    Exhaustion**

The defendants first argue that, because Washington has not adequately pursued his concerns through the prison's grievance system, he has not exhausted his administrative remedies and cannot proceed with this litigation.

In his complaint, Washington has three distinguishable claims.[2] One is that prison officials improperly delayed treatment of his chest pains in the period from July 2005 through January 2006. He

---

defendants participating in this action, except where noted to the contrary.

[2] Pursuant to this Court's order of February 12, 2007, the complaint in this matter consists of the following. The original complaint remains controlling, except that paragraphs four through eight of the original complaint are replaced by paragraphs four, seven, eight, nine, and ten of the "jurisdictional facts" in the proposed amended complaint; and paragraphs ten through twenty-four of the original complaint are replaced by paragraphs one through sixteen of the "facts" in the proposed amended complaint. The proposed amended complaint, which Washington styled as a supplemental complaint, lacks a docket number and appears after Doc. No. 40 in the Clerk's file for this case.

separately challenges several $3 co-payments that he was assessed during this period. He then claims that, once his condition was diagnosed, medical staff refused to supply him prescribed pain medications. Washington filed two grievances, through the prison's grievance system, relevant to these claims.

In a grievance he filed on March 16, 2006, Washington chiefly complained about the co-payments he was assessed for appointments regarding his chest pains. In this grievance, Washington separately expressed concern that medical staff delayed giving attention to this issue. (Exh. 1.)[3] The grievance was denied by a decision on March 31, 2006, which determined that the co-payments were proper. This decision did not address the issue of delay. (Exh. 2.)

Washington appealed the decision on April 16, 2006, again reiterating his concerns about the delay in receiving treatment. (Exh. 3.) The appeal was considered in a report on May 18, 2006. It found that, over the period from June 2005 to January 2006, he had six appointments on the issue of chest pain and that he was charged a $3 co-payment for each visit. Because the cause of the chest pain was not discovered in the first five visits, Washington was refunded the co-payments for those visits. (Exh. 4).

Unlike the March 31 decision, the May 18 decision directly addressed Washington's concerns about delay. The decisionmaker found that the delays did not signal unprofessional care, noting that "[o]ften diagnoses of conditions are made by process of elimination." (*Id.*)

In a grievance he filed on July 21, 2006, Washington chiefly stated that medical staff was not supplying him with prescribed medication, among other complaints. (*See* Exh. 5.) The grievance was denied by a decision on July 28, 2006, which Washington did not appeal. (*See* Exh. 5; Exh. 6 at 2; Exh.

---

[3] Exhibits are cited in an appendix at the end of this report and recommendation.

7.)

Turning to the analysis, the requirement to exhaust administrative remedies comes from the Prisoner Litigation Reform Act, which provides in relevant part,

> No action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a). So where a prisoner does not exhaust administrative remedies, by not lodging a grievance about an issue in accordance with prison regulations, the prisoner may not seek relief in the federal courts. *Chelette v. Harris*, 229 F.3d 684, 688 (8th Cir. 2000).

A prisoner must exhaust all administrative remedies *before* filing suit, and if exhaustion was not completed by the time of filing, dismissal is required. *Johnson v. Jones*, 340 F.3d 624, 627 (8th Cir. 2003). Washington started this action on February 10, 2006, yet he did not file his grievances until March 2006 and July 2006. Even if these grievances adequately raised the issues in this action, they were not timely, and so Washington did not properly exhaust his remedies. This reasoning, by itself, is a sufficient basis to grant the defendants' motion for summary judgment in its entirety.

Assuming for the sake of argument that the grievances were timely, the only other question is whether prior administrative proceedings adequately addressed the issues in this action. To decide whether exhaustion is adequate, a court looks at whether the issue was fully presented in accordance with prison regulations. *See Jones v. Bock*, 127 S.Ct. 910, 922-23 (2007).

Minnesota prison regulations generally provide that a prisoner may file a formal grievance, and if the result is not satisfactory, the prisoner may bring an appeal. (Exh. 8.) Washington fully advanced the

co-payment and treatment issues through his grievance of March 16 and his appeal of April 16. Because the report of May 18 addressed both concerns, it is plain that these matters were fully presented for decision, and so Washington has adequately exhausted them.

Though Washington raised the medication issue in his grievance of July 21, he did not appeal the decision of July 28. Under Minnesota prison regulations, prison officials would have reason to believe that he was satisfied with the result, or that he was no longer interested in pursuing the issue. So assuming this grievance was timely, Washington still cannot pursue this issue. Consistent with this result, the following analysis is limited to whether prison staff improperly delayed treatment of Washington's chest pain.

**C.      Personal Involvement**

On the merits of Washington's claims, the defendants initially contend that they were not personally involved in any misconduct, and so they cannot be held liable. As a general rule, a person is not liable under § 1983 unless that person was personally involved in, or had direct responsibility for, violation of a constitutional right. *Mayorga v. Missouri*, 442 F.3d 1128, 1132 (8th Cir. 2006).

On the issue of personal involvement, the material question is whether defendants had any role in the alleged delays in diagnosing Washington's chest pains. According to the relevant medical records, Washington initially complained of chest pains on July 24, 2005, but a physician did not examine him until January 20, 2006. (*See* Exh. 9 at 1-4.)

Counting the first report on July 24 but excluding the January 20 appointment, Washington was examined by prison medical staff for chest pain on six occasions. Because some the records of these visits are difficult to read, it is not always possible to determine who examined Washington for each of these visits. (*See* Exh. 9 at 1-4.) When reasonable inferences are taken in Washington's favor, only one visit

may have involved a defendant: an examination by Kari Anderson on October 24, 2005.  (Exh. 9 at 3.)

Though Anderson may have been involved in the treatment of Washington's chest pain, there is no indication that she decided to delay treatment.  And there is no other evidence the remaining defendants were personally involved.  Washington cannot establish a claim against the defendants on this theory.

**D.     Supervisory Liability**

Washington suggests that, even if certain defendants were not personally involved, they are still liable due to their supervisory roles.  The record indicates that three of the defendants may have had such roles: Jessica Symmes, the warden; Kathryn Reid, the health services administrator; and Barb Nelson, a nurse supervisor.  (Exh. 10 at 1; Exh. 11 at 1; Exh. 12 at 2.)

There is no vicarious liability under § 1983.  This means a supervisor or employer cannot be liable for the acts of an employee or subordinate, simply because of the relationship between them.  But a supervisor may be liable where that person is deliberately indifferent to a substantial risk of harm, or where that person tacitly authorizes misconduct, by subordinates.  *Elder-Keep v. Aksamit*, 460 F.3d 979, 986 (8th Cir. 2006).

To establish deliberate indifference in this context, a plaintiff must show the defendant knew of a substantial risk of harm, and that this risk caused the plaintiff to be injured.  It is not necessary for the defendant to know the precise cause of the injury.  *Cox v. Sugg*, 484 F.3d 1062, 1066 (8th Cir. 2006).

Where a prisoner alleges that a warden has not adequately supervised prison staff, but does not show any particular facts that would show deliberate indifference or tacit authorization, there is no claim against the warden under § 1983.  *Ambrose v. Young*, 474 F.3d 1070, 1079 (8th cir. 2007); *cf. Meloy v. Bachmeier*, 302 F.3d 845, 849 (8th Cir. 2002) (holding that, where warden has no role in medical

treatment decisions, that person cannot be liable for diagnostic decisions of medical staff).

The defendants note that, after Washington complained about his medical treatment, Symmes answered by a memorandum on January 23, 2006. Symmes informed Washington that, at that point, the chest pain was believed to be "musculoskeletal pain" due to over-exercise. She noted that he was given pain medications and directed to decrease his exercise. Symmes added that Washington had recently been examined by a physician, who had ordered tests to determine the cause of the chest pain. (Exh. 13.)

Aside from this single communication, the record does not show that Symmes had any more knowledge or involvement in Washington's treatment. Given the absence of further proof, there is no reasonable indication that Symmes either deliberately disregarded or tacitly authorized a risk of substantial harm to Washington. This outcome forecloses any further claim against Symmes and she is entitled to summary judgment.

Regarding Reid and Nelson, the record lacks any indication that in their supervisory duties, they either deliberately disregarded or tacitly authorized a risk of substantial harm. Their position, therefore, is the same as Symmes'. Without personal involvement or supervisory liability, there are no claims against the defendants under § 1983, and they are entitled to summary judgment for this reason as well.

### E.     Deliberate Indifference

Although the prior analysis is sufficient to grant summary judgment for the defendants, this Court nevertheless acknowledges the central issue: whether prison staff improperly delayed their treatment of Washington's chest pain. This issue merits some additional comment.

When a prisoner alleges a violation of the Eighth Amendment based on deliberate disregard of medical needs, the prisoner is required to establish two elements. First, the prisoner must show an

objectively serious medical need. Second, the prisoner must show that the defendants knew of the need but deliberately disregarded it. *Plemons v. Roberts*, 439 F.3d 818, 823 (8th Cir. 2006).

This Court will assume, solely for the sake of argument, that Washington had an objectively serious medical need. If so, he must then show that the defendants knew of this need but deliberately disregarded it. In this area, it is necessary to show that the defendants knew of an excessive risk, and that they wantonly or recklessly exposed Washington to this risk. *Pool v. Sebastian County*, 418 F.3d 934, 944 (8th Cir. 2005); *Ruark v. Drury*, 21 F.3d 213, 216 (8th Cir. 1994).

A deliberate disregard cannot be based on a difference of opinion as to proper treatment, or on allegations that medical treatment was negligent. *Bender v. Regier*, 385 F.3d 1133, 1137-38 (8th Cir. 2004). Where the defendants produce evidence that medical care was adequate, and the prisoner does not present evidence to the contrary, summary judgment is proper. *Meiur v. Greene County Jail Employees*, 387 F.3d 1115, 1118-19 (8th Cir. 2007).

Where a prisoner alleges that delays in treatment amounted to deliberate disregard, there must be some showing that the delay had detrimental effects. *Moots v. Lombardi*, 453 F.3d 1020, 1023 (8th Cir. 2006); *Laughlin v. Schriro*, 430 F.3d 927, 929 (8th Cir. 2005). Where a prisoner complains of chest pain, but there is no indication that delays in treatment adversely affected that prisoner's prognosis, the record does not show deliberate disregard. *Dulany v. Carnahan*, 132 F.3d 1234, 1243 (8th Cir. 1997).

Washington first complained about chest pain in July 2005. Because he stated that he was doing up to 500 push-ups a day, medical staff believed that this exertion was the cause of the pain. They also considered whether the pain was from heartburn. Appropriate medication was prescribed, and Washington was directed to decrease his exercise. (Exh. 9 at 1-4.)

Over the ensuing months, Washington continued to report chest pain once every few weeks. Because correctional officers reported that Washington was still exercising excessively, medical staff continued to attribute the chest pain to this problem. (*Id.*)

Washington reported chest pain more frequently in December 2005 and January 2006. Over this time, he learned from his mother that his uncle had a heart defect, and Washington expressed concern that his chest pain was also caused by a heart defect. (*Id.* at 4; *see* Exh. 13.) Based on these concerns, medical staff referred Washington for an appointment with a physician.

In an ensuing examination on January 20, 2006, Dr. Stephen Craane examined Washington and discovered a heart murmur. According to his notes from that visit, Craane believed that the heart murmur may be the cause of the chest pain. Based on this concern, Craane ordered a series of tests. (Exh. 9 at 5.)

Craane began by directing blood testing, a chest x-ray, and an electrocardiogram. The results from these tests revealed no problems. (Exh. 9 at 8-10, 13.) Craane ordered an echocardiogram, as well as a cardiac stress test with radiological imaging. These tests also revealed no problems, and notwithstanding the heart murmur, consulting physicians found Washington's heart function to be normal. (Exh. 9 at 13-14, 19-20.) Craane concluded that the chest pains had no vascular origin and questioned whether they might be caused by anxiety. (Exh. 9 at 18.)

Although Washington challenges how medical staff treated his chest pain in the period from July 2005 to January 2006, this dispute can only be characterized as a disagreement about the proper course of treatment, rather than deliberate disregard. Even with all reasonable inferences taken in his favor, the record shows that medical staff considered his complaints. They simply did not agree that his chest pains

9

were cause for more serious concern.

Washington counters that medical staff were deliberately indifferent because they did not discover the heart murmur. There is no showing, however, that the heart murmur caused the chest pain, or that delay in discovering this condition affected Washington's prognosis. To the contrary, medical staff devoted substantial resources to the heart murmur, only to determine that it did not cause the chest pain.

Because the record does not show a substantial risk, or that the defendants were aware of it, there is not reasonable evidence to show deliberate indifference here. Washington cannot establish his claim for deliberate indifference in violation of the Eighth Amendment. This claim fails on the merits and the defendants may also obtain summary judgment for this reason.

**F.    Other Issues**

The preceding analysis determined that Washington did not timely exhaust his dispute about the co-payments, which is dispositive of this claim. Assuming this claim does survive, Washington challenges the co-payments in the context of deliberate indifference under the Eighth Amendment, and has not specified any other basis for this claim. Because the record does not show that the co-payments inhibited the availability of medical treatment, this claim also fails on its merits.

The preceding analysis generally omits defendant Aillijo Allidis, who is not participating in this litigation, and indeed may never have been served. But a court may grant summary judgment on its own initiative where the opposing party has a fair opportunity to present its case. *Advantage Consulting Group, Inc. v. ADT Security Sys., Inc.*, 306 F.3d 582, 588 (8th Cir. 2002).

Washington has brought his own motion for summary judgment, yet he has not substantiated his claim against Allidis. And Allidis' position in this litigation is not distinguishable from that of the other

defendants. There is no indication that Washington timely exhausted his claims against Allidis, and the record does not show that Allidis was either personally involved or had supervisory liability for any violations of the Eighth Amendment.[4]

This Court concludes that it is also appropriate to grant summary judgment in Allidis' favor. This result means that all claims against all defendants are fully decided, that there are no surviving claims in the complaint, and that this matter is appropriately dismissed in its entirety.

### G. Conclusion and Recommendation

Washington did not timely exhaust his claims before commencing this litigation, and so this matter may be dismissed in its entirety. In the alternative, for claims that were adequately exhausted, the record lacks evidence to show the defendants were either personally involved, or had supervisory liability, for misconduct. The record also lacks evidence that, in violation of the Eighth Amendment, the defendants deliberately disregard of a serious medical need. It is appropriate, therefore, to deny Washington's motion for summary judgment and to grant the defendants' motion for the same.

Being duly advised of all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED THAT:**

1. Washington's motion for summary judgment (Doc. No. 36) be **DENIED.**

2. The defendants' motion for summary judgment (Doc. No. 47) be **GRANTED.**

3. Summary judgment be granted in favor of defendant Aillijo Allidis.

---

[4] In his amended complaint, Washington alleges that Allidis had an alias, Bille Helminiak. (Exh. 11 at 2.) Careful examination of the record does not indicate that a person with either name was materially involved in the matters at issue here.

    4.       All claims in this matter be **DISMISSED WITH PREJUDICE.**

    5.       This litigation be dismissed in its entirety and judgment entered.

Dated this 19th day of July, 2007.                    s/Jeanne J. Graham

                                                        JEANNE J. GRAHAM
                                                        United States Magistrate Judge

### NOTICE

Pursuant to Local Rule 72.2(b), any party may object to this report and recommendation by filing and serving specific, written objections by August 7, 2007. A party may respond to the objections within ten days after service. Any objections or responses filed under this rule shall not exceed 3,500 words. The District Court shall make a de novo determination of those portions to which objection is made. Failure to comply with this procedure shall operate as a forfeiture of the objecting party's right to seek review in the United States Court of Appeals for the Eighth Circuit.

### APPENDIX

Exh. 1        Aff. of K. Ebeling, Feb. 8, 2007, Exh. 3 (Grievance of Mar. 16, 2006).

Exh. 2        Aff. of K. Ebeling, Feb. 8, 2007, Exh. 3 (Report of Mar. 23, 2006).

Exh. 3        Aff. of K. Ebeling, Feb. 8, 2007, Exh. 3 (Grievance Appeal of Apr. 16, 2006).

Exh. 4        Aff. of K. Ebeling, Feb. 8, 2007, Exh. 3 (Report of May 18, 2006).

Exh. 5        Aff. of K. Ebeling, Feb. 8, 2007, Exh. 4 (Report of July 28, 2006).

Exh. 6        Aff. of K. Ebeling, Feb. 8, 2007.

Exh. 7        Aff. of K. Ebeling, Feb. 8, 2007, Exh. 2 (Grievance Listing of Feb. 1, 2007).

Exh. 8        Aff. of K. Ebeling, Feb. 8, 2007, Exh. 1 (Dep't of Corrections, Policy 303.101).

Exh. 9        Aff. of K. Reid, Feb. 7, 2007, Exh. 1 (Medical Records).

Exh. 10      Aff. of J. Symmes, Feb. 7, 2007.

Exh. 11        Aff. of K. Reid, Feb. 7, 2007.

Exh. 12        Amended Complaint (undated).  *See infra* n. 2.

Exh. 13        Aff. of J. Symmes, Feb. 7, 2007, Exh. 1 (Memo. of Jan. 23, 2007).